PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/02/98
THOMAS  K. KAHN
CLERK

No. 95-5555

D.C. Docket No.95-2001-CIV-SH

HERVE AUGUSTE,

Plaintiff-Appellee,

versus

ATTORNEY GENERAL, UNITED STATES, Janet Reno, IMMIGRATION AND NATURALIZATION SERVICE, UNITED STATES, DISTRICT DIRECTOR FOR THE IMMIGRATION AND NATURALIZATION SERVICE, Walter Cadman,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Florida

**(September 2, 1998)**

Before TJOFLAT and EDMONDSON, Circuit Judges, and O'NEILL*, Senior District Judge.

* Honorable Thomas N. O'Neill, Jr., Senior U. S. District Judge for The Eastern District of Pennsylvania, sitting by designation.

ON PETITION FOR REHEARING

TJOFLAT, Circuit Judge:

We withdraw our opinion in 140 F.3d 1373 (11th Cir. 1998) and substitute therefor the following opinion.

Under the Visa Waiver Pilot Program ("VWPP"), see 8 U.S.C. § 1187 (1994); see also 8 U.S.C.A. § 1187 (West supp. 1998), an alien from a qualifying country who meets certain requirements not relevant here may enter the United States without a visa for no more than ninety days if the alien waives "any right . . . to contest, other than on the basis of an application for asylum, any action for deportation against the alien." 8 U.S.C. § 1187(b)(2)(1994).[1] On October 13, 1994, Auguste entered the United States pursuant to the VWPP after signing a waiver form.[2] He remained in the United States beyond the authorized ninety-day period, which expired on January 12, 1995. While in the country, he obtained a fraudulent work permit and Social Security card and signed a contract to purchase a hotel in Pompano Beach, Florida, for $7.3 million.

---

[1] For reasons given in the text, we review Auguste's petition under the INA as it existed prior to the extensive amendments passed in 1996.

[2] The waiver provision of that form read as follows:

WAIVER OF RIGHTS: I hereby waive any rights to review or appeal of an immigration officer's determination as to my admissibility, or to contest, other than on the basis of an application for asylum, any action in deportation.

CERTIFICATION: I certify that I have read and understood all the questions and statements on this form. The answers I have furnished are true and correct to the best of my knowledge and belief.

2

The Border Patrol eventually located Auguste at his Florida residence and took him into custody on September 4, 1995. That day, Walter Cadman, District Director of the INS, issued an order of deportation because Auguste had violated the conditions of his admission to the United States under the VWPP by staying beyond ninety days. No hearing was held, in conformity with the procedures outlined in the INS regulations that were promulgated pursuant to the VWPP.[3] Cadman scheduled Auguste's deportation for September 12, 1995.

On September 12, Auguste filed a petition for review of his deportation, pursuant to 8 U.S.C. § 1105a (1994),[4] in the District Court for the Southern District of Florida. He alleged,

---

[3]   These regulations state, in relevant part:

An alien who has been admitted to the United States under the provisions of [the VWPP] who is determined by an immigration officer to be deportable from the United States . . . shall be removed from the United States to his or her country of nationality or last residence. Such removal for deportation shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability . . . .

8 C.F.R. S 217.4(c) (1997).

[4]   That section provided, in relevant part, that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(10) (1994). As discussed in the text, section 1105a was repealed in 1996 to eliminate review of orders of removal. See 8 U.S.C.A. § 1105a(a) (West supp. 1998).

Auguste's counsel filled out and filed a standardized form created by the Administrative Office of the United States Courts for state prisoners seeking a writ of habeas corpus under 28 U.S.C. § 2254 (1994). On the top of the form, the number 2254 was crossed out and the number 2241 was handwritten above, suggesting that Auguste sought a writ of habeas corpus under 28 U.S.C. § 2241 (1994).

A review of the district court record reveals, however, that Auguste's petition has been consistently treated as a petition for relief pursuant to 8 U.S.C. § 1105a(a)(10). The district court explicitly refers to Auguste's petition as a § 1105a petition in its memorandum opinion and elsewhere. Moreover, Auguste's petition and the arguments he presented in the district court, in his appellate brief, and at oral argument on appeal all indicate that he is seeking judicial review of his deportation order under section 106 of the INA, 8 U.S.C. § 1105a (1995).

3

inter alia, that his waiver of any right to a deportation hearing was not "knowing and intelligent." The district court granted a stay of deportation and, after conducting emergency hearings on September 12 and 15, found "the record woefully inadequate to support a finding that Herve Auguste made an intelligent and knowing waiver of his due process right to deportation proceedings." It therefore granted Auguste's petition and ordered that formal deportation proceedings be conducted and that Auguste be released on bond pending conclusion of the proceedings.

The Attorney General appealed from this judgment. On appeal we held that the district court lacked jurisdiction to hear Auguste's petition, and that we lacked jurisdiction to hear the appeal, because of amendments to the Immigration and Nationality Act (INA) enacted in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Div. C, Omnibus Appropriations Act, 1997, Pub. L. No. 104-208, 1996 U.S.C.C.A.N. (110 Stat.) 3009-546 (codified in scattered sections of 8 U.S.C.), that were passed while Auguste's appeal was pending. Section 306 of the IIRIRA completely restructured judicial review of deportation orders, which were renamed "orders of removal." That section repealed section 106 of the INA, 8 U.S.C. § 1105a (1995), in its entirety, see § 306(b), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612, and replaced it with a new section 242, see § 306(a), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-607 to -612 (codified at 8 U.S.C. § 1252, see 8 U.S.C.A. § 1252 (West Supp. 1998)). Amended section 242(g), titled "Exclusive Jurisdiction," now states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA].

4

Pub. L. No. 104-208, § 306(a)(2), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612 (codified at 8 U.S.C. § 1252(g), see 8 U.S.C.A. § 1252 (West Supp. 1998)). This provision is made applicable "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under" the INA.[5] Pub. L. No. 104-208, § 306(c)(1), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612.

The new section 242(g) went into effect on April 1, 1997. See INS v. Yang, 519 U.S. 26, --- n. 1, 117 S.Ct. 350, 352 n. 1, 136 L.Ed.2d 288 (1996); Ramirez-Centeno v. Wallis, 957 F.Supp. 1267, 1269 (S.D.Fla. 1997). As stated supra, pursuant to the IIRIRA, section 242(g) applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under [the INA]." § 306(c)(1), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612. Auguste's petition is clearly a "claim by [an] alien arising from the decision ... by the Attorney General to ... execute removal orders against [the] alien under" the INA, as contemplated by section 242(g). We therefore held, in our initial opinion, that since April 1, 1997, no court has had jurisdiction to review Auguste's deportation order, except as provided by newly amended 8 U.S.C. § 1252.

Under section 1252, as amended by the IIRIRA, judicial review of orders of removal may only be initiated in a court of appeals. See 8 U.S.C. §§ 1252(a)(1), 1252(b)(2) (West supp. 1998). Auguste did not comply with this procedure,[6] as he filed his petition with the district

---

[5] We conclude that the reference to "such Act" at the end of this section is a reference to the INA and not to the IIRIRA because a "past proceeding," by definition, could not have arisen under the new act.

[6] We presume, without deciding, that the new judicial review scheme applies to orders of removal issued pursuant to the VWPP; as discussed in the text, however, we review Auguste's appeal under the pre-IIRIRA statutes. Whether or not judicial review under 8 U.S.C. § 1252 is

court.[7]  We therefore held that the district court lacked jurisdiction to hear Auguste's petition,

and that we lacked jurisdiction over this appeal.  See Auguste, 118 F.3d at 725-27.

On petition for rehearing, Auguste points to section 309(c) of the IIRIRA, which

provides as follows:

> (c) TRANSITION FOR ALIENS IN PROCEEDINGS--
>
> (1) GENERAL RULE THAT NEW RULES DO NOT APPLY.--
> Subject to the succeeding provisions of this subsection, in the case of an alien
> who is in exclusion or deportation proceedings as of the title III-A effective date--
> (A) the amendments made by this subtitle shall not apply, and
> (B) the proceedings (including judicial review thereof) shall continue to be
> conducted without regard to such amendments.

Pub. L. No. 104-208 § 309(c), 1996 U.S.C.C.A.N. (110 Stat.) at

3009-625 (emphasis added).  Auguste was clearly "in exclusion or deportation proceedings as of

the title III-A effective date," April 1, 1997.  He argues, therefore, that this section carves out an

exception to section 242(g)'s general abrogation of the federal courts' jurisdiction over

deportation proceedings not conducted pursuant to 8 U.S.C. § 1252.  We disagree.

Although section 309(c) does provide that the IIRIRA amendments do not apply to

proceedings that are pending as of April 1, 1997, it is section 242(g) that is an exception to

309(c), not the opposite as Auguste claims.  This conclusion follows from the plain language of

section 306(c)(1), which states that the judicial review structure created by section 242 "shall

apply as provided under section 309, except that subsection (g) of section 242 . . . shall apply

---

available for aliens who are ordered removed pursuant to the VWPP, it is clear that no other
form of judicial review is authorized.

[7] This "mistake" was certainly not Auguste's or his counsel's fault: the IIRIRA was not
enacted until September 30, 1996, more than a year after Auguste filed his petition pursuant to
the then-in-force judicial review procedures of the INA.

without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act." IIRIRA § 306(c)(1) (emphasis added). Thus, although section 309(c)'s transition rules govern most of IIRIRA's judicial review system for deportation orders, 242(g) is explicitly excluded, and therefore applies retroactively even to those aliens, like Auguste, who were in deportation proceedings as of April 1, 1997.

Section 309(a)'s language also supports this conclusion. That section provides that IIRIRA's general effective date is April 1, 1997. Section 309(a) specifically notes, however, that section 306(c) creates an exception to the applicability of that date.[8] This exception is 306(c)'s provision of retroactivity for 242(g).

Other circuits have already concluded that 242(g) divests the courts of jurisdiction over proceedings pending as of IIRIRA's effective date. The Seventh Circuit stated that "the reference to subsection (g) in section 306(c) is meant only to provide an exception to section 309(c)'s general principle of non-retroactivity, so that when [IIRIRA] comes into effect on April 1, 1997, subsection (g) will apply retroactively, unlike the other subsections." Lalani v. Perryman, 105 F.3d 334, 336 (7th Cir. 1997) (deciding that section 242(g) applied retroactively but did not become effective until April 1, 1997). Similarly, while deciding a challenge against execution of a deportation order, the D.C. Circuit stated that "IIRIRA now undisputably deprives both courts of appeals and district courts of jurisdiction to decide the instant action." Ramallo v. Reno, 114 F.3d 1210, 1213 (D.C. Cir. 1997); see also Hose v. INS, 141 F.3d 932, 935 (9th Cir.

---

[8] Section 309(a) states: "IN GENERAL.-Except as provided in . . . section . . . 306(c), . . . this subtitle and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act." Pub. L. No. 104-208, § 309(a), 1996 U.S.C.C.A.N., (110 Stat.) 3009, 3009-635.

7

1998).  We join these circuits and conclude that 242(g) applies retroactively, divesting the courts

of jurisdiction to decide Auguste's petition.[9]

Accordingly, we VACATE the district court's judgment and REMAND the case with the

instruction that the district court dismiss Auguste's petition for lack of subject matter

jurisdiction.

---

[9] We note that we would lack jurisdiction to hear Auguste's claim even if we concluded that 242(g) did not apply retroactively.  As noted previously, both Auguste and the district court have treated Auguste's challenge as a petition for a writ of habeas corpus pursuant to INA § 106(a)(10), 8 U.S.C. § 1105a(a)(10) (1994).  See supra note 4.  Even before IIRIRA was enacted, however, § 106(a)(10) was amended, and its grant of habeas corpus jurisdiction was repealed.  See Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 401(e), 110 Stat. 1214, 1268 (1996).  Thus, AEDPA § 401(e) deprives this court of jurisdiction to hear a petition for habeas corpus under INA § 106.

AEDPA § 401(e) applies to Auguste's petition even though Auguste filed his petition before April 24, 1996, the date on which AEDPA became effective.  As this court stated in Boston-Bollers v. INS, 106 F.3d 352(11th Cir. 1997), in which we considered § 440, another jurisdiction-revoking provision of the AEDPA, "[a]pplying section 440 to petitions for review of deportation orders pending on the date of the passage of the AEDPA is not retroactive application affecting substantive rights, but is a prospective application of a jurisdiction-eliminating statute."  Id. at 354.  By the same rationale, AEDPA § 401(e) applies to Auguste's petition and abrogates our jurisdiction.