[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

─────────────────

No. 96-4421
Non-Argument Calendar

─────────────────

D. C. Docket No. 95-6193-CR-KLR


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

BERRARD ROMEO,

                                        Defendant-Appellant.


─────────────────

Appeal from the United States District Court
for the Southern District of Florida

─────────────────

**(September 10, 1997)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.


DUBINA, Circuit Judge:

There is presently pending in this cause a petition for rehearing filed by appellant Berrard Romeo ("Romeo"). In response to the petition, the government represents to this court that it has no objection to our granting panel rehearing and vacating that portion of Romeo's sentence ordering judicial deportation as a condition of a term of supervised release. Notwithstanding the government's concession, we have made our own decision concerning the merits of this matter. See Hunter v. United States, 101 F.3d 1565, 1574 (11th Cir. 1996) (declining to rest decision on government's concession in part because "past experience has taught us that the government's position on criminal law issues is fluid"). For the reasons that follow, we grant the petition for rehearing, vacate our previous unpublished opinion in United States v. Berrard Romeo, No. 96-4421 (11th Cir. May 22, 1997), and substitute this opinion in lieu thereof.

I. PROCEDURAL HISTORY

A federal grand jury sitting in the Southern District of Florida indicted Romeo, charging him with possession with intent to distribute and importation of cocaine. Romeo pled guilty to the importation charge. The district court sentenced Romeo to 84 months imprisonment, followed by a term of four years supervised release. As part of the sentence, and as a special condition of supervised release, the district court ordered Romeo deported. Romeo objected to the district court's order of deportation.

2

Romeo filed a timely appeal on September 5, 1996. On April 1, 1997, 8 U.S.C. § 1229a(a) (West Supp. 1997) was enacted into law as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"). Relying on our decision in United States v. Oboh, 92 F.3d 1082 (11th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1257 (1997), we affirmed Romeo's sentence, including the order of deportation. Romeo then filed his unopposed petition for rehearing. We stayed a ruling on the petition for rehearing pending a decision in United States v. Diequimde, ____ F.3d ____, (11th Cir. 1997). However, Diequimde did not reach the issue squarely presented to us in this appeal.

## II. ISSUE

Whether 8 U.S.C. § 1229a(a) (1997), enacted on April 1, 1997, as part of the IIRAIRA, eliminated the district court's jurisdiction to order judicial deportation pursuant to 18 U.S.C. § 3583(d) ( West Supp. 1997), requiring the court of appeals to grant rehearing and vacate that portion of Romeo's sentence ordering judicial deportation.

## III. ANALYSIS

In United States v. Oboh, this court, sitting *en banc*, held that 18 U.S.C. § 3583(d) authorizes a district court to order the deportation of a defendant "subject to deportation" as a condition

3

of supervised release. Congress subsequently passed the IIRAIRA, a series of amendments to the Immigration and Nationality Act ("INA"). The IIRAIRA provides in pertinent part that a hearing before an immigration judge is the exclusive procedure for determining whether an alien may be deported from the United States. See 8 U.S.C. § 1229(a)(3) (1996). In the present appeal, we must determine the effect of the IIRAIRA on the district court's authority to order deportation as a condition of supervised release.[1]

---

[1]    Prior precedent does not have to be followed where there is a change in statutory law that undermines that precedent. See United States v. Woodard, 938 F.2d 1255, 1258 n.4 (11th Cir. 1991), in which we said:

> Although several of our cases state the principle that "only" the en banc court or the Supreme Court can overrule a panel decision, in a situation such as this where our authority derives from Congress, we have no doubt that a clear change in the law by Congress could also justify a panel of this Court in not following an earlier panel's decision, where the prior panel's decision was based on legislation that had been changed or repealed. See Davis v. Estell, 529 F.2d 437, 441 (5th Cir. 1976) ("one panel of this Court cannot disregard the precedent set by a prior panel, even though it conceives error in the precedent. Absent an overriding Supreme Court decision or a change in the statutory law, only the Court en banc can do this").

Even though Woodard discusses prior panel precedent, we conclude the same principle applies to prior en banc precedent as well. After all, the rationale is that the precedent, whether panel or en banc, has been undermined to such an extent by the statutory change that the question presented to the present panel is a different one than that previously decided.

A. <u>United States v. Oboh</u>.

We held in <u>Oboh</u> that district courts have the authority under 18 U.S.C. § 3583(d) to order deportation as a condition of supervised release. In reaching this conclusion, we relied primarily on the language of § 3583(d), which provides in pertinent part:

> If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.

18 U.S.C. § 3583(d). We found this language "clear[ly] and unequivocal[ly]" granted district courts the power to order deportation independently of the INS. <u>Oboh</u>, 92 F.3d at 1084.[2]

B. <u>The New Immigration Law.</u>

On September 30, 1996, the president signed the IIRAIRA into law. The IIRAIRA contains a provision which states that a hearing before an immigration judge is the exclusive means by which an alien may be deported:

---

[2] Five judges dissented from the majority opinion in <u>Oboh</u>. The dissent interpreted § 3583(d) as merely allowing district courts to order alien defendants to be surrendered to the INS for deportation proceedings in accordance with the INA. The dissent concluded that, considering § 3583(d) in conjunction with the INA, § 3583(d) did not bestow the authority to order direct, independent judicial deportation.

5

**§ 1229a.  Removal Proceedings**

**(a)  Proceeding**

**(1)  In general**

An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien.

**(2)  Charges**

An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under section 1227(a) of this title.

**(3)  Exclusive procedures**

Unless otherwise specified in this chapter, *a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States. . . .*

8 U.S.C. § 1229a (emphasis added).  Section 1229a also details the procedures by which an immigration judge decides whether to admit or deport an alien.  No court has yet interpreted § 1229a(a)(3), but the language is quite clear:  immigration judges alone have the authority to determine whether to deport an alien.  This conclusion is consistent with other provisions of the IIRAIRA which limit the judiciary's role in immigration matters by sharply restricting judicial review of deportation orders.  See 8 U.S.C. § 1252(g); Auguste v. Attorney General, 118 F.3d 723, 725-26 (11th Cir. 1997).

Thus, it is apparent to us that the new law alters the district courts' power to order deportation. The INA, as amended by

IIRAIRA, 8 U.S.C. § 1229(a)(3), does "otherwise" authorize judicial orders of deportation, but only if such orders are "requested by the United States Attorney with the concurrence of the Commissioner [of the INS] and the court chooses to exercise such jurisdiction." 8 U.S.C. § 1228(c)(1) (1997) (formerly 8 U.S.C. § 1252a(c)(1) (1996)). See also 8 U.S.C. § 1228(c)(2) (1997) (formerly 8 U.S.C. § 1252(c)(2) (1996)). The INA, as amended by the IIRAIRA, does not provide for, or authorize, judicial deportation pursuant to 18 U.S.C. § 3583(d). Thus, we hold that 18 U.S.C. § 1229a(a) eliminates any jurisdiction district courts enjoyed under § 3583(d) to independently order deportation. In the wake of the statutory change, § 3583(d) authorizes a district court to order that a defendant be surrendered to the INS for deportation proceedings in accordance with the INA, but it does not authorize a court to order a defendant deported.

Moreover, we hold that 18 U.S.C. § 1229a(a) is applicable to all pending cases because "[i]ntervening statutes conferring or ousting jurisdiction" are ordinarily given immediate effect, "whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed .... " Landgraf v. USI Film Products, 511 U.S. 244, 114 S. Ct. 1483, 1501, 1502 (1994) (citation omitted). Furthermore, § 1229a(a) is applicable because it is an "intervening statute [which] ... affects the propriety of prospective relief," i.e., the deportation order, and is therefore not "retroactive." Landgraf, 114 S. Ct. at 1501.

7

## IV. CONCLUSION

Because we hold 18 U.S.C. § 1229a(a) of the INA, enacted as part of the IIRAIRA, divests the district court of the authority to order deportation, and this jurisdictional change in the law occurred while Romeo's appeal was still pending before this court, we grant Romeo's petition for rehearing, vacate that portion of Romeo's sentence ordering judicial deportation, and remand this case to the district court for further proceedings consistent with this opinion.

VACATED and REMANDED.